UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAMES DOW VANDIVERE, # 99078-011,

                Petitioner,

v.                                                  ACTION NO.
                                                    2:11cv398

E.D. WILSON, Warden, or
Acting Warden of FCC Petersburg,

                Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. §2241. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Court recommends denying Vandivere's petition for writ of habeas corpus and granting respondent's Motion to Dismiss. Accordingly, the Court recommends Petitioner's Expedited Motion for a Preliminary Injunction (ECF No. 16), which has been fully briefed (ECF Nos. 17 and 18), be denied as moot.

## I. STATEMENT OF THE CASE

### A. Background[1]

      On August 11, 1999, Petitioner James Dow Vandivere ("Vandivere" or "Petitioner") was sentenced in the United States District Court for the Northern District of California and ordered

---

[1] This section is comprised primarily of the statement of facts contained in Respondent's Motion to Dismiss. These facts are undisputed by Petitioner and contain information taken from the declarations of Timothy Newbill ("Newbill"), Correctional Counselor at the Federal BOP, and Marvella Heard ("Heard"), the Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the BOP. Newbill's declaration was submitted as Exhibit 1 to Respondent's Memorandum in Support of Motion to Dismiss (ECF No. 12), and Heard's declaration is attached as Exhibit 2 to the Memorandum.

to pay a special assessment of $400.00 and a $2,500.00 fine. Resp't's Mem. in Supp. of Mot. to Dismiss 4, ECF No. 12. The Court ordered the fine due and payable immediately and allowed for the money to be collected in accordance with the Bureau of Prisons ("BOP") Inmate Financial Responsibility Program ("IFRP"). Id. On June 7, 2003, Petitioner completed payment of his $400 special assessment.  Id. On August 12, 2008, he was designated to the Federal Correctional Complex ("FCC") in Petersburg, Virginia. Id.

Between August 13, 2008, and April 19, 2010, Vandivere's IFRP participation status was deemed exempt due to insufficient funds. Resp't's Mem. in Supp. of Mot. to Dismiss 4. On April 19, 2010, Petitioner agreed to and signed an inmate financial plan, obligating him to pay $25.00 on a quarterly basis. Id. at 5. Under this plan, the payment would be drawn from his trust fund account on a quarterly basis to offset the $2,500.00 fine. Id. At the time he agreed to this monthly payment, Petitioner owed $2,325.00 on his fine. Id.

On June 8, 2010, Petitioner made a quarterly payment in the amount of $25.00 towards the balance due on his fine.  Resp't's Mem. in Supp. of Mot. to Dismiss 5.  On July 14, 2010, Petitioner was removed from his position working the day shift at the Captain's compound and was reassigned as a Dining Room orderly. Id. On August 12, 2010,  Petitioner spent $87.60 at the commissary, and on August 19, 2010, he spent $11.30 at the commissary. Id.

On September 3, 2010, Petitioner missed his IFRP payment. Resp't's Mem. in Supp. of Mot. to Dismiss 5. On September 8, 2010, a program review of Vandivere's trust fund account indicated that $491.25 had been deposited into his trust fund account since March 2010, of which $98.90 had been spent by Petitioner at the commissary. Id. On September 9, 2010, Petitioner

spent $14.85 again at the commissary. Id. Also on September 9, 2010, he was placed on IFRP Refuse status for the September 3, 2010 missed payment. Id.

On October 3, 2011, Petitioner's status was changed to IFRP Temporarily Exempt due to insufficient funds in his trust fund account. Resp't's Mem. in Supp. of Mot. to Dismiss 5-6. At that time, the amount of funds that were deposited into Petitioner's trust fund account since April 2011 totaled $36.75. Id. at 6. Petitioner still owes $2,300.00 of his $2,500.00 fine. Id.

Petitioner filed a petition for a writ of habeas corpus in this Court on July 14, 2011, challenging his participation in the IFRP. ECF No. 1. Specifically, the petition alleged that the BOP is imposing sanctions against him for failure to participate in the IFRP. Id. Petitioner's initial request in this petition was that the Court order the BOP to immediately vacate its decision to place Petitioner on Refuse Status for failure to submit payment, to vacate all "sanctions" imposed against him, and to restore Petitioner to "the position he would have been in but for" the BOP's decision to place him on Refuse Status. Id. Finally, in the original petition, he asked this Court to order the BOP to refund all lost wages and IFRP payments taken since September 9, 2009, amounting to approximately $75.00 in total. Id.

On November 16, 2011, the Petitioner filed a Motion to Amend his petition, stating that the relief requested in his original petition had been granted in part, as he was removed from IFRP refusal status in October 2011. ECF No. 9. On November 23, 2011, the Court granted Petitioner's Motion to Amend the relief requested. Order, ECF No. 10. On December 22, 2011, Respondent filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. ECF No. 11. Also on December 22, 2011, Respondent mailed the motion and a notice in accordance

with Roseboro v. Garrison, 528 F.2d 209 (4th Cir. 1975) and Local Rule 7(K) to Petitioner, advising him that he was entitled to file a response within twenty-one days. ECF No. 13.

On January 19, 2012, Petitioner filed a Response to the Motion to Dismiss (ECF No. 14), asserting he had insufficient time to properly respond to the Motion to Dismiss. The Court construed this assertion as a request for an extension of response time, which this Court granted, allowing Petitioner until March 2, 2012 to file a supplemental response to the Motion to Dismiss. Order, ECF No. 15. Petitioner's time for filing a supplement to his Response has expired, and this matter is ripe for adjudication.

On February 6, 2010, Petitioner filed an Expedited Motion for a Preliminary Injunction to prevent his transfer to another facility, pending the resolution of all present pleadings before this Court with respect to Petitioner. ECF No. 16. On February 9, 2012, Respondent filed a Response in Opposition (ECF. No 17), to which Petitioner responded on February 27, 2012 (ECF No. 18). That matter is also ripe for adjudication. Because the Court recommends granting Respondent's Motion to Dismiss, the Court further recommends denying the Expedited Motion as moot.[2]

**B. Ground Alleged[3]**

Because the Petitioner was granted his Motion to Amend the original petition, Petitioner's only remaining request is for the Court to order Respondent to advise BOP staff to

---

[2] In his Expedited Motion for a Preliminary Injunction, Vandivere argued that "[a] transfer to another facility would seriously prejudice [his] ability to maintain his (2) actions." This argument is incorrect, for "when the Government moves a habeas petitioner after she properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004). Moreover, because the Court is recommending that the petition be dismissed, the Court has, indeed, addressed his requests for relief. Therefore, the Motion for an Expedited Preliminary Injunction is moot and unnecessary.

[3] To the extent that any of Petitioner's original claims were re-asserted or remained after his Motion to Amend was granted, the Court asserts his failure to exhaust the administrative process bars the Court from addressing those original claims, in addition to the one remaining claim.

4

adhere to BOP policy and regulations pertaining to the IFRP, specifically the requirement that the unit team exclude from its financial assessment the $75.00 per month deposit into a prisoner's trust fund account. Pet'r's Mot. to Amend 1. That is, Petitioner wants this Court "to make it clear that this court expects BOP policy and CFRs to be adhered to at all institutions within this district, particularly where it comes to the Inmate Financial Responsibility Program." Id.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Exhaustion

"Exhaustion is an important doctrine in both administrative and habeas law." Woodford v. Ngo, 548 U.S. 81, 88 (2006). Prior to seeking judicial relief, an inmate is required to exhaust his administrative remedies. This requirement extends to inmates filing § 2241 petitions. McClung v. Shearin, 2004 WL 225093, at **1 (4th Cir. 2004) (per curiam). An inmate must *properly* exhaust administrative remedies. Proper exhaustion includes compliance with the agency's deadlines and procedures. Woodford, 548 U.S. at 90. An inmate's failure to properly exhaust the administrative grievance process prior to filing his habeas petition will render his claims procedurally defaulted. McClung, 2004 WL 225093, at **1. Failure to exhaust may only be excused, and, therefore considered by the Court, upon a showing of cause and prejudice. Id.

Generally, the exhaustion requirement serves two purposes. First, "[e]xhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.' Second, exhaustion promotes efficiency." Woodford, 548 U.S. at 89 (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)).

In the BOP, administrative remedies are exhausted through an Administrative Remedy Program set forth in 28 C.F.R §§ 542.10-19. The Administrative Remedy Program allows an inmate to seek a formal review of an issue or complaint relating to his confinement. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the occurrence on which the complaint is based. 28 C.F.R § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal, again using the appropriate form, to the Regional Director within twenty calendar days of the date on which the basis of the appeal occurred. Id. If the inmate is not satisfied with the Regional Director's response, he must file an appeal to the General Counsel within thirty days of the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). The regulations further set forth the circumstances under which an appeal may be rejected and when an extension of time may be granted. 28 C.F.R. §§ 542.14, 542.15, 542.17.

Respondent concedes that Petitioner pursued remedies relating to the IFRP and the consequences of his non-participation of five separate occasions. Mem. in Supp. of Mot. for Summ. J. 9. However, Respondent contends that Vandivere has failed to exhaust the administrative grievance process prior to filing his habeas petition. Id.  In support, Respondent submitted the declaration of Marvella Heard ("Heard"), the Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the Bureau of Prisons. Mem. in Supp. of Mot. for Summ. J., Heard Decl. Ex. 2, at ¶ 1.

Heard states that she has access to inmates' official records, including those maintained in the SENTRY database. Heard Decl. ¶ 3. Heard declares that she reviewed the SENTRY Administrative Remedy Generalized Retrieval records for administrative remedies filed by

Vandivere. Id. at ¶ 4. According to the official SENTRY administrative remedy records, Vandivere filed Administrative Remedy No. 602319 on August 17, 2010 , complaining that he lost his job and pay grade. Id. at ¶ 7. The records indicate that the institution rejected this complaint for failure to first pursue informal resolution with the unit manager. Id. The records also show that, on August 30, 2010, Vandivere made contact with the unit team for informal resolution, and Vandivere was given ten days from this date to resubmit his complaint. Id. Vandivere resubmitted his complaint on October 22, 2010, which was rejected as untimely. Id. He did not pursue a remedy beyond the institution level. Id.

Vandivere filed Administrative Remedy No. 603856 on August 23, 2010, complaining that he was fired from his job. Heard Decl. ¶ 8. This complaint was also rejected for failure to first pursue informal resolution with his unit manager. Id. On August 30, 2010, Vandivere contacted the unit team and was given ten days from that date to resubmit the complaint. Id. As was the case with Remedy No. 602319, the complaint was rejected as untimely upon Vandivere's October 22, 2010 resubmission. Id. Vandivere failed to pursue the remedy beyond the institution level. Id.

On September 23, 2010, Vandivere submitted Administrative Remedy No. 608397, which contained complaints about his IFRP contract. Heard Decl. ¶ 9. The SENTRY records indicate that Vandivere appealed to the Region, but his appeal was rejected as untimely because it was postmarked twenty-four days after the institution's response. Id. The rejection informed Vandivere that he could resubmit his request, along with a staff memorandum, explaining why his complaint was late. Id. However, Vandivere failed to do so and did not appeal this remedy beyond the regional level. Id.

On November 3, 2010, Petitioner submitted Administrative Remedies No. 613659 and No. 613660, both containing complaints that he was fired from his job. Heard Decl. ¶¶ 10, 11. The institution rejected these complaints as  repetitive. Id. Vandivere did not appeal these responses to the Region. Id.

In his petition, Vandivere concedes that he failed to exhaust the administrative remedy process. Pet'r's Opp. and Resp., ECF No. 18. However, he claims that he was unable to exhaust because of strict time and resource restraints placed upon Petitioner to respond and the unwillingness of the institution staff to "cooperate as necessary, for petitioner to maintain timely submissions to complete the process." Id.

Construed generously, Petitioner pursued administrative remedies relating to the IFRP and the consequences related to his non-participation on multiple occasions while incarcerated at FCC Petersburg. However, the record shows, and Petitioner even concedes, that the administrative process was not exhausted.   Additionally, Petitioner has shown that he understands and appreciates the requirement to file at every level in order for there to be exhaustion, having filed sixty-one administrative remedies since being in BOP custody and fully exhausted the administrative process on each of those claims. Resp't's Mem. in Supp. of Mot. to Dismiss 10.  For these reasons, Petitioner's ground is procedurally barred from review in this Court. See McKart v. United States, 395 U.S. 185, 193-95 (1969) (providing that no one is entitled to judicial relief for a supposed to threatened injury until the prescribed administrative process has been exhausted); Merki v. Sullivan, 853 F.2d 599, 600-601 (8th Cir. 1988); Guida v. Nelson, 603 F.2d 261 (2d Cir. 1979); Swinson v. U.S. Parole Comm., 682 F. Supp. 29 (E.D.N.C.

1988), aff'd, 849 F.2d 606 (4th Cir. 1988) (dismissing a federal prisoner's application for habeas corpus relief for failure to exhaust all available administrative remedies).

**B. Even if Petitioner had exhausted the administrative process, there is no justiciable action available for relief.**

### i. BOP's IFRP Program

The IFRP is a voluntary program whereby the unit staff helps an inmate, who has court-ordered financial obligations associated with his or her sentence, develop a financial plan to re-pay these obligations. 28 C.F.R. § 545.10. These financial obligations include (1) special assessments imposed pursuant to 18 U.S.C. § 3013, (2) court-ordered restitution, (3) fines and court costs, (4) state or other local court obligations, and (5) other federal government obligations. 28 C.F.R. § 545.11. Inmates are responsible for making satisfactory payments to unit staff under the IFRP. Id.

An inmate's payment progress is taken into consideration by his or her unit team each time the staff assesses an inmate's demonstrated level of responsible behavior. Id. The minimum payment for non-UNICOR and UNICOR grade 5 inmates is $25.00 per quarter. 28 C.F.R. § 545.11 (b) (1). Participation and progress in the program is reviewed at least every six months. 28 C.F.R. 545.11 (c) (1).

Upon review of an inmate's financial plan, the unit team determines the total funds deposited in the inmate's trust account for the previous six months, subtracting out the IFRP payments made by the inmate during those months and excluding $450.00 from the calculation. 28 C.F.R. § 545.11(b) (The $450.00 figure is comprised of the $75.00 monthly deposit made into the trust fund account to allow the inmate the opportunity to better maintain telephone

communication under the Inmate Telephone System. Id.). Should the unit team discover an inmate is not making agreed-upon payments, the team may exercise discretion to place the inmate on IFRP Refuse Status. BOP Program Statement 5380.08, p. 13.

Refusal by an inmate to participate in IFRP, or failure by an inmate to comply with their financial payment plans, carries certain severe consequences. Ten privileges may be affected by an inmate's non-participation choice or failure to pay. 28 C.F.R. § 545.11(d).  For example, a non-compliant or non-participating inmate will not receive any furlough, aside from possibly an emergency or medical furlough, and will not receive performance pay above the maintenance pay level, or bonus or vacation pay. 28 C.F.R. § 545.11(d)(2)-(3).  Additionally, these inmates will not be assigned to any work detail outside the facility perimeters, will not be placed in a community-based program, will be subject to a strict monthly commissary spending limitation, will be quartered in the lowest housing status, and will not receive incentives for participation in residential drug treatment programs.  28 C.F.R. § 545.11(d)(4), (8), (6), and (11). Furthermore, where a non-compliant inmate is assigned to UNICOR and fails to make sufficient progress on financial plan payments, here or she will be removed from UNICOR and will not be allowed on the UNICOR waiting list for six months. 28 C.F.R. § 545.11(d)(5).

**ii. Ripeness: BOP has followed the law, and there is no indication they will fail to do so in the future**

Petitioner's amended request for relief seeks only that the Court advise BOP staff to adhere to BOP policy and regulations to the IFRP, specifically the requirement that the unit team exclude from its financial assessment the $75.00 per month deposit into Petitioner's trust fund account. Pet'r's Mot. to Amend 1.

Notably, Petitioner does not allege any conduct in violation of the IFRP regulations or BOP Policy, as outlined in the Code of Federal Regulations.  Moreover, Respondent did in fact exclude from its assessment the monthly $75.00 assessment, pursuant to 28 C.F.R. § 545.11(b). For this reason, Petitioner appears to ask for no tangible relief.

In addition, there is no indication, nor does Petitioner allege in the amended petition, that the BOP failed to follow the law. Essentially, Petitioner is simply asking the court to instruct the BOP they need to continue following the law. The Court need not instruct an agency to continue to follow the law when there is no indication that there has been a departure from the law and, in fact, is prevented from doing so under the ripeness doctrine.

Article III of the Constitution requires that federal courts may adjudicate only actual, ongoing cases or controversies. See U.S.C.A. Const. art. III, § 2, cl. 1; see also, Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (citations omitted).  In order to satisfy this requirement, a plaintiff must suffer or be threatened with an actual injury that is traceable to the defendant. The parties must maintain a personal stake throughout the litigation, where a favorable decision would likely redress the injury. Lewis, 494 U.S. at 477-78.

The Supreme Court has recognized that "[t]he ripeness doctrine is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (2003) (internal citations omitted).  The basic rationale of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies . . . ." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967) (overruled on other grounds).

An action is unripe when the issues are not sufficiently concrete for judicial resolution. Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190 (1983). The central tenet of the ripeness doctrine is that "courts should not render decisions absent a genuine need to resolve a real dispute." Wright, Miller & Cooper, Federal Practice and Procedure, § 3532.1 (3d ed. 2008).  Article III confines the power of federal courts to resolving "real and substantial controver[ies] *admitting of specific relief* through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (emphasis added).

Petitioner cites no actual or potential future violation by the BOP, and the BOP has followed the law. Therefore, there is no justiciable controversy for which the Court may provide any such tangible relief. See, e.g., Metzenbaum v. Fed. Energy Regulatory Comm'n, 675 F.2d 1282, 1289-1290 (D.C. Cir. 1982) ("The ripeness doctrine is drawn from both Article III limitations on judicial power and discretionary reasons of policy for refusing to exercise existing power. The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that . . . indeed may not occur at all.").

**iii. Mootness**

The mootness doctrine stems from the same Article III requirements applicable to the ripeness doctrine, as enunciated above. See Western Oil and Gaw Ass'n v. Sonoma Cnty., 95 F.2d 1287, 1290 (9th Cir. 1990). In general, an action is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam (citations omitted). A mootness inquiry asks "whether there is anything left for the court to do." Western Oil and Gas Ass'n, 905 F.2d at 1290.

Any tangible relief that could have been afforded to Petitioner was already given to him by the BOP. As Petitioner concedes in his amended petition, the BOP removed Petitioner from IFRP Refuse Status at his request. Pet'r's Mot. to Amend. 1. As previously stated, nothing in the record indicates or suggests that BOP officials have failed to act in accordance with BOP regulations or policies regarding his IFRP payment plan and status.

The request that the Court advise Respondent to advise the BOP to continue abiding by BOP policy and regulations, when staff has strictly adhered to both, is frivolous and not required. The Court therefore finds the remaining request for relief to be moot.

## III. **RECOMMENDATION**

Based on the foregoing, the Court recommends that Vandivere's petition for writ of habeas corpus be DENIED, and Respondent's Motion to Dismiss be GRANTED. The Court therefore further recommends that Petitioner's Expedited Motion for a Preliminary Injunction be DENIED as moot.

## IV. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

      2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

      The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).


                                                                 /s/
                                        Tommy E. Miller
                           United States Magistrate Judge

Norfolk, Virginia
April 5, 2012

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the

following:

James Dow Vandivere, # 99078-011
Federal Correctional Complex- Medium
P.O. Box 1000
Petersburg, VA 23804

Virginia Van Valkenburg, Esq.
United States Attorney's Office
101 W. Main Street, Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By

Deputy Clerk
April 6 , 2012

15